NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.E., R.E., and
M.E.

No. 1 CA-JV 23-0018
FILED 7-25-2023

---

Appeal from the Superior Court in Maricopa County
No. JD37976
The Honorable Robert Ian Brooks, Judge

**AFFIRMED**

---

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

_____

**MEMORANDUM DECISION**

Chief Judge David B. Gass delivered the decision of the court, in which Judge Brian Y. Furuya and Judge Andrew M. Jacobs joined.

_____

**G A S S**, Chief Judge:

¶1 Father appeals the superior court's order terminating his parental rights to his three biological children—A.E., R.E., and M.E. Mother is not a party to this appeal. Because reasonable evidence supports the order, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 This court views the evidence, and reasonable inferences drawn from it, in the light most favorable to affirming the superior court's ruling. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 13 (App. 2002).

¶3 Father has three children with mother—eight-year-old A.E., seven-year-old R.E., and five-year-old M.E. In August 2019, the Department of Child Safety (DCS) received a report mother was unstable and acting erratically. In September 2019, father and mother engaged in a physical fight in front of the children, during which father pinned mother down and choked her. Additionally, the DCS investigator reported father had a long history of substance abuse, was on probation, and had pending felony drug charges.

¶4 DCS took custody of the children and petitioned the superior court to adjudicate them dependent. Soon after, father was incarcerated. DCS then placed the children with their maternal grandmother. In November 2019, the superior court found the children dependent as to father and, in January 2020, adopted a case plan of family reunification.

¶5 In April 2021, father was released from custody. DCS and adult probation provided father services, including substance-abuse testing and treatment, a psychological evaluation, anger-management counseling, marriage counseling, and supervised visitation. The parents participated in services, and the superior court returned the children to their custody but did not dismiss the dependency.

**¶6** A week after their return, father attacked mother—shoving, punching, and kicking her. Mother called the police and reported father had been "drinking and taking pills again." DCS removed the children and once more placed them with their maternal grandmother. Father then failed to comply with drug testing or engage in services, and only communicated with DCS once.

**¶7** At a subsequent review hearing, father objected to DCS's request to change the case plan to termination and adoption, arguing guardianship was more appropriate. But father disclosed no one willing to serve as a guardian. At the May 2022 review hearing, the superior court changed the case plan over father's objection but gave father leave to file a motion for guardianship. Around the same time, father was incarcerated once again and had an expected release date of February 2024, almost two years in the future.

**¶8** DCS then moved to terminate father's parental rights in June 2022 under the fifteen-month out-of-home placement ground. *See* A.R.S. § 8-533.B.8(c). At the time of adjudication, father also had a pending probation revocation hearing. The superior court terminated father's parental rights, reasoning father had made "minimal progress in his recognition of anger management and domestic violence."

**¶9** This court has jurisdiction over father's timely appeal under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 8-235, 12-120.21.A, and -2101.A.1.

## ANALYSIS

**¶10** Because father does not challenge the statutory grounds for termination, he has abandoned that argument. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577 ¶ 5 (App. 2017). Instead, father argues the termination of his parental rights does not serve the children's best interests.

**¶11** DCS must prove by a preponderance of the evidence termination is in the children's best interests. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts[,]" this court will affirm an order terminating parental rights if supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009). The children's "interest in stability and security" must be the superior court's primary focus. *Alma S. v. Ariz. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 12 (2018).

**¶12** Termination of parental rights serves a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Alma S.*, 245 Ariz. at 150 ¶ 13. The superior court may find a child would benefit from termination if an adoption plan were in place, the child was adoptable, or the child "would benefit psychologically from the stability an adoption would provide." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994).

**¶13** The superior court found the children would benefit from termination because maternal grandmother was meeting their needs and wished to adopt them. The superior court further found termination would give the children stability because maternal grandmother provided a home free of drugs and domestic violence. The record supports these findings.

**¶14** Even so, father argues because he has a very close bond with the children, DCS had to present expert psychological testimony on "whether the long-term psychological implications of severance were outweighed by the immediate need for permanency."

**¶15** First, Arizona law does not require expert testimony in a best-interests determination. *See* A.R.S. § 8-533.B. Instead, it simply requires the superior court determine "how the child would benefit from a severance or be harmed by the continuation of the [parent-child] relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990).

**¶16** Second, as father acknowledges, the superior court recognized father's bond with, and love for, the children. Even so, the superior court determined the children "have now been in an out-of-home placement for over [three years] and are in need of the stability and permanency that [termination] will provide." *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99 ¶ 12 (App. 2016) ("The existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests.").

**¶17** The record, thus, shows the superior court considered the effect termination would have on the children, yet found termination was in the children's best interests. Reasonable evidence supports the superior court's finding, and this court will not reweigh the evidence on appeal. *Mary Lou C. v. Ariz. Dep't of Econ Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004).

**¶18** Next, father claims DCS "did not present any evidence that [maternal grandmother] had herself addressed any prior domestic violence issues." He cites mother's testimony of significant domestic violence as a child, presumably in maternal grandmother's home. Father's standing to

make this argument is questionable. *See Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 370 ¶ 2 (App. 2009) ("[O]nce [a parent's] rights [are] terminated, [the parent] no longer ha[s] standing to challenge [the child's] placement and anticipated adoption."). And no evidence in the record suggests the children had witnessed domestic violence in maternal grandmother's home in the three years they lived there. Indeed, the superior court found maternal grandmother will provide the children with a domestic-violence-free home.

¶19 Father also argues guardianship was more appropriate because grandmother's motivation to adopt was based solely on available adoption subsidies. But father never filed a guardianship motion even though the superior court invited him to do so.

¶20 Even so, the superior court expressly considered guardianship as part of the best-interests inquiry. The record shows maternal grandmother wished to adopt the children and neither DCS nor any other party had identified anyone willing to serve as a guardian. *See* A.R.S. § 8-871.A.4 (establishing a guardianship requires finding "[t]he likelihood that the child would be adopted is remote or termination of parental rights would not be in the child's best interest"). Finally, regardless of maternal grandmother's motivation, the superior court found "the [c]hildren are young, and adoption better provides for their future stability and permanency." Reasonable evidence supports this finding. *See Jordan C.*, 223 Ariz. at 93 ¶ 18.

¶21 Accordingly, the superior court did not abuse its discretion when it determined terminating father's parental rights was in the children's best interests.

**CONCLUSION**

¶22 We affirm.

